```
                    IN THE UNITED STATES DISTRICT COURT
                 FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: DIET DRUGS (PHENTERMINE/      :    MDL DOCKET NO. 1203
FENFLURAMINE/DEXFENFLURAMINE)        :
PRODUCTS LIABILITY LITIGATION        :
                                     :
THIS DOCUMENT RELATES TO:            :
                                     :
SHEILA BROWN, et al.                 :
                                     :
              v.                     :
                                     :
AMERICAN HOME PRODUCTS               :
CORPORATION                          :    NO. 99-20593
                                     :
THIS DOCUMENT RELATES TO:            :
                                     :    2:15 MD 1203
Claimant:     Janice E. Madkins      :
Claim No.:    183/00 8266896         :    2:16 MD 1203
                                     :
```

**MEMORANDUM IN SUPPORT OF SEPARATE PRETRIAL ORDER NO. 9150**

Bartle, J.                                          September 26, 2013

Janice E. Madkins ("Ms. Madkins" or "claimant"), a class member under the Diet Drug Nationwide Class Action Settlement Agreement ("Settlement Agreement") with Wyeth, Inc.,[1] seeks benefits from the AHP Settlement Trust ("Trust"). Under the Settlement Agreement, Matrix Compensation Benefits ("Matrix Benefits") are awarded to compensate claimants for medical conditions caused by Pondimin® or Redux™ ("Diet Drugs").[2]

---

1. Prior to March 11, 2002, Wyeth was American Home Products Corporation. In 2009, Pfizer, Inc. acquired Wyeth.

2. Matrix Benefits are paid according to two benefit matrices (Matrix "A" and Matrix "B"), which generally classify claimants for compensation purposes based upon the severity of their

(continued...)

Claimant submitted to the Trust a Blue Form signed on April 17, 2003. In that form, Ms. Madkins represented that she ingested both Pondimin® and Redux™ for 61 days or more and that these Diet Drugs were dispensed by Dr. Terry McDermott and Dr. Don Chumley of the Broadway Clinic in Oklahoma City, OK. Part II of claimant's Green Form asserted conditions that, if confirmed at audit, would support an award of Matrix A-1, Level II benefits. Following audit, the Trust determined that claimant was not entitled to Matrix Benefits based on the findings of the auditing cardiologist and her failure to document Diet Drug use. The Trust determined that claimant's Contest materials also failed to establish entitlement to Matrix Benefits. The Trust issued a Final Post-Audit Determination on December 13, 2007.

Ms. Madkins claims that she ingested Diet Drugs for 61 days or more and is thus entitled to Matrix A-1 benefits. As a result, claimant filed an appeal for arbitration, and the court

---

2.(...continued)
medical conditions, their ages when diagnosed, and the presence of other medical conditions that also may have caused or contributed to a claimant's valvular heart disease. See Settlement Agreement, §§ IV.B.2.b. and IV.B.2.d.(1)-(2). Matrix A-1 describes the compensation available to Diet Drug Recipients with serious valvular heart disease who took the drugs for 61 days or longer and who did not have any of the alternative causes of the disease that made the B matrices applicable. In contrast, Matrix B-1 outlines the compensation available to Diet Drug Recipients with serious valvular heart disease who were registered as having only mild mitral regurgitation by the close of the Screening Period or who took the drugs for 60 days or less or who had factors that would make it difficult for them to prove that their heart disease was caused solely by the use of these Diet Drugs.

referred the matter to an Arbitrator.[3] See Settlement Agreement, § IV.C.4.h-i. The Arbitrator issued a Report and Award on December 28, 2012, affirming the Trust's determination that Ms. Madkins had not established that she had ingested Diet Drugs.

Claimant has now appealed to this court as permitted under the Settlement Agreement. See id. We apply a clearly erroneous standard of review to the Arbitrator's findings of fact and conduct a plenary review of conclusions of law. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 947-49 (1995). The decision of this court is final and binding. See Settlement Agreement, § VI.C.4.1.

On appeal, Ms. Madkins asserts that she has submitted sufficient proof under the Settlement Agreement to establish that she ingested Diet Drugs for 61 days or more. The relevant provision provides:

> In order to complete the submission of a Claim and to qualify for any benefits under the Settlement Agreement, each Class Member must submit documentary proof to the Trustees and/or Claims Administrator(s) of the period of time for which the Diet Drugs Pondimin® and/or Redux™ were prescribed and dispensed to the Diet Drug Recipient who is the subject of the Claim. This proof must include one of the following:
>
> (1) If the diet drug was dispensed by a pharmacy, the identity of each

---

3. Ms. Madkins also claims she had moderate mitral regurgitation, and thus is entitled to Level II benefits. As a result, claimant disputed this determination of the Trust to show cause. Given our disposition with respect to whether Ms. Madkins submitted sufficient proof of ingestion of Diet Drugs, the order to show cause regarding her claim is moot.

-3-

> pharmacy that dispensed Diet Drugs to the Diet Drug Recipient, including its name, address, and telephone number, and a copy of the prescription dispensing record(s) from each pharmacy, which should include the medication name, quantity, frequency, dosage, and number of refills prescribed, prescribing physician's name, assigned prescription number, original fill date and each subsequent refill date; or,
>
> (2) If the diet drug was dispensed directly by a physician or weight loss clinic, or the pharmacy record(s) is unobtainable, the identity of each prescribing physician, including the prescribing physician's name, address, and telephone number and a copy of the medical record(s) prescribing or dispensing the diet drug(s). The medical record(s) must include records which identify the Diet Drug Recipient, the Diet Drug name, the date(s) prescribed, the dosage, and duration the drug was prescribed or dispensed;
>
> (3) If the pharmacy records and medical records are unobtainable, an affidavit under penalty of perjury from the prescribing physician or dispensing pharmacy identifying the Diet Drug Recipient, the drug(s) prescribed or dispensed, the date(s), quantity, frequency, dosage and number of prescriptions or refills of the Diet Drug(s).

See id., § VI.C.2.d. The burden of proving Diet Drug ingestion remains with the claimant. See Pretrial Order ("PTO") No. 7779 at 6 (Apr. 15, 2008).

Here, Ms. Madkins has submitted medical records from the Broadway Clinic for the time period August 7, 1995 through June 15, 1998. However, these records make no reference to the Diet Drugs Pondimin® or Redux™. Instead, the records reference only Fastin and Phenodrex, neither of which is a Diet Drugs.

Ms. Madkins also submitted a Blue Form Declaration dated May 12, 2004, with a supporting affidavit signed by Dr. Wallace B. McLeod, III. Dr. McLeod declares in his affidavit that he did not dispense Pondimin or Redux to claimant but that he has access to her pharmacy records from the Broadway Clinic. While he states that Pondimin was dispensed to her from August 1995 to December 1995, he notes that neither the dosage nor the number of pills dispensed was documented. He also identifies Dr. Don Chumley and Dr. Terry McDermott, who are no longer employed at the Broadway Clinic and are unavailable to fill out the Blue Form Declaration, as having dispensed Pondimin® and/or Redux™ to claimant. As the Arbitrator noted, the Declaration of Dr. McLeod is neither a pharmacy record documenting the use of Diet Drugs, nor is it a medical record prescribing or dispensing the Diet Drugs. Furthermore, it is not an affidavit from the prescribing physician or dispensing pharmacy. The Arbitrator also is correct that the Blue Form Declaration conflicts with contemporaneous medical records submitted by Ms. Madkins, which reference only Fastin and Phenodrex.

In further support of her claim Ms. Madkins presented a letter from Emili Ruiz of the Broadway Clinic dated March 15,

-5-

2007, in which Ms. Ruiz writes that Dr. Don Chumley was the prescribing physician for Ms. Madkins, that the Broadway Clinic dispensed "phen-phen" and that Dr. Chumley is deceased. Again, Ms. Ruiz's letter is not a pharmacy record, a medical record, or an affidavit from the prescribing physician or dispensing pharmacy documenting the drug prescribed.

Finally, Ms. Madkins has provided a Blue Form Declaration dated August 23, 2007 from Dr. Matthew Haag of the Broadway Clinic. Dr. Haag specifies in his Declaration that he is the physician who prescribed Pondimin® and/or Redux™ to Ms. Madkins. The Declaration reflects that he prescribed phentermine and fenfluramine from October 30, 1995 to July 10, 1997 to claimant. This Declaration, however, conflicts with the contemporaneous medical records submitted by claimant, which reference only Fastin and Phenodrex, not the Diet Drugs Pondimin® or Redux™. In addition, the Arbitrator found that as of December 13, 2007, the website of the Broadway Clinic described Dr. Haag as having been graduated from medical school in 2000, almost 3 years after the last date he stated in his Declaration that he allegedly prescribed Diet Drugs to Ms. Madkins.

We conclude that the Arbitrator's determination was not clearly erroneous as to his findings of fact, and he did not err as to his conclusions of law. The Report and Award of the Arbitrator will be affirmed.