IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: DIET DRUGS (PHENTERMINE/ FENFLURAMINE/DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION | : : : : | MDL DOCKET NO. 1203 |
| THIS DOCUMENT RELATES TO: SHEILA BROWN, et al. v. AMERICAN HOME PRODUCTS CORPORATION | : : : : : : : : : | NO. 99-20593 |
| THIS DOCUMENT RELATES TO: Claimant:    Catherine M. Kukla Claim No.:   183/00 8048309 | : : : : | 2:15 MD 1203 |

**MEMORANDUM IN SUPPORT OF SEPARATE PRETRIAL ORDER NO. 9350**

Bartle, J.                                                  September 16, 2014

Catherine M. Kukla ("Ms. Kukla" or "claimant"), a class member under the Diet Drug Nationwide Class Action Settlement Agreement ("Settlement Agreement") with Wyeth, Inc.,[1] seeks additional benefits from the AHP Settlement Trust ("Trust"). Under the Settlement Agreement, Matrix Compensation Benefits ("Matrix Benefits") are awarded to compensate claimants for medical conditions caused by Pondimin® or Redux™ ("Diet Drugs").[2]

---

1. Prior to March 11, 2002, Wyeth was American Home Products Corporation.  In 2009, Pfizer, Inc. acquired Wyeth.

2. Matrix Benefits are paid according to two benefit matrices (Matrix "A" and Matrix "B"), which generally classify claimants

In April 2003, Ms. Kukla submitted a Green Form seeking severity level II Matrix Benefits. She had not opted out of the Seventh Amendment to the Settlement Agreement and was designated a Category One class member. Her claim was subject to medical review and was subsequently paid by the Seventh Amendment Fund Administrator. In December 2010, when she was 81 years old, Ms. Kukla experienced an alleged high-level matrix event. As a result, in October 2011, she filed a Supplemental Green Form, signed by Dr. Prakash Shah, in which she sought Level IV Matrix Benefits.

On October 26, 2011, the Trust denied Ms. Kukla's supplemental claim. It found that the medical conditions described in the Supplemental Green Form would entitle her to payment for Level IV Matrix Benefits except for her age. The Trust determined that all of the asserted high-level matrix

---

for compensation purposes based upon the severity of their medical conditions, their ages when diagnosed, and the presence of other medical conditions that also may have caused or contributed to a claimant's valvular heart disease. See Settlement Agreement, §§ IV.B.2.b. and IV.B.2.d.(1)-(2). Matrix A-1 describes the compensation available to Diet Drug Recipients with serious valvular heart disease who took the drugs for 61 days or longer and who did not have any of the alternative causes of the disease that made the B matrices applicable. In contrast, Matrix B-1 outlines the compensation available to Diet Drug Recipients with serious valvular heart disease who were registered as having only mild mitral regurgitation by the close of the Screening Period or who took the drugs for 60 days or less or who had factors that would make it difficult for them to prove that their heart disease was caused solely by the use of these Diet Drugs.

events occurred when Ms. Kukla was 81 years old.  The matrices contained in the Settlement Agreement set forth applicable benefits awards based upon the severity of a claimant's injury and the claimant's age.  While these matrices contain age categories for claimants who were 79 years of age or younger at the time of their diagnosis or qualifying event, they contain no age category for claimants 80 or above.  Based upon the lack of a provision in the matrices for claimants over the age of 79, the Trust concluded that Ms. Kukla was ineligible for Matrix Benefits stemming from the asserted high-level event and issued a notice of administrative closure of her claim.

On November 9, 2011, Ms. Kukla appealed the Trust's administrative determination, and this court referred the matter to arbitration pursuant to §§ VI.C.4.h and VI.C.4.i of the Settlement Agreement.  In a report dated April 25, 2013, the Arbitrator concurred with the Trust's determination on the basis that the Settlement Agreement "states that a Claimant must be diagnosed with the relevant Matrix Qualifying Events prior to the age of 80."  Because she was 81 years old when she experienced the qualifying events, the Arbitrator reasoned, Ms. Kukla was ineligible for Matrix Benefits.

Ms. Kukla has now appealed to this court as permitted under the Settlement Agreement.  See id.  We apply a clearly erroneous standard of review to the Arbitrator's findings of

fact and conduct a plenary review of conclusions of law. <u>First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. 938, 947-49 (1995). The decision of this court is final and binding. <u>See</u> Settlement Agreement § VI.C.4.l.

The Seventh Amendment to the Settlement Agreement provides that a Category One or Category Two Class Member can qualify for Seventh Amendment Matrix Level III, IV or V Benefits from the Trust. <u>See</u> Seventh Amendment § IX.A.1. In order to do so, the Class Member must satisfy the deadlines set forth in § IX.A.1.a of the Seventh Amendment and submit a properly completed Green Form and accompanying documentation. Seventh Amendment §§ I.B.64, IX.A.1. Significantly, the Class Member must also

> (ii) qualif[y] for the payment of benefits on Matrix Levels III, IV or V under the terms of the Settlement Agreement as it existed before the Execution Date; and
>
> (iii) qualif[y] as having the High Matrix Level Qualifying Factors on the same Matrix Level for which the Class Member qualifies for benefits under the Settlement Agreement as it existed before the Execution Date.

<u>Id.</u> §§ IX.A.1.b(ii)-(iii).

The Settlement Agreement defines the class of individuals eligible to receive benefits and situates these class members within specific Matrix categories. Settlement Agreement §§ IV.B.1, IV.B.2.c. Payment of the claims of eligible Class

-4-

Members is governed by four matrices set forth in the Settlement Agreement. See Settlement Agreement § IV.B.2.a. Each matrix cell "describes the amount which an eligible Class Member is entitled to recover" based on disease severity and age at the time of diagnosis. See id. This court has previously described the scope of these matrices:

> The matrices are composed of cells formed by the intersection of five separate matrix levels of severity and 11 separate age intervals ranging from diet drug recipients who are less than or equal to 24 years old to diet drug recipients who are 70 to 79 years of age. Generally, the amount of compensation provided by the matrices decreases with age both because younger individuals have a longer damage period and because, as discussed above, age increasingly confounds the effects of diet drugs in producing valvular regurgitation.

In re Diet Drugs, Civil Action No. 99-20593, Pretrial Order ("PTO") No. 1415, 2000 WL 1222042, at *22 (E.D. Pa. Aug. 28, 2000). The matrices contain no age range beyond the age of 79.

Ms. Kukla maintains, and the Trust does not contest, that she meets all of the relevant requirements for Matrix Benefits aside from age.[3] The only question before us is whether

---

3. Specifically, Ms. Kukla and the Trust agree that Ms. Kukla is a Category One Class Member. Ms. Kukla also maintains that she satisfies the criteria for Matrix Benefits eligibility for Category One Class Members set forth in §§ IX.A.1.a and IX.A.1.b of the Seventh Amendment. Section IX.A.1.a requires a claimant to have experienced a high-level Matrix event that occurred and be diagnosed by the earlier of December 31, 2011 or 15 years after the claimant's last ingestion of diet drugs. Part (i) of § IX.A.1.b requires the claimant to submit a Green Form and

Ms. Kukla's age at the time of her alleged high-level matrix event precludes her from receiving benefits. In her briefs, Ms. Kukla asserts that a claimant's age should not be used to exclude the claimant from Matrix Benefit eligibility altogether. She argues that there is a lack of any pertinent discussion of age as a qualifying factor in either the Settlement Agreement or its Seventh Amendment. The Trust, in contrast, reads the lack of any provision in the matrices for claimants over the age of 79 as a bar against receipt of any Matrix Benefits, notwithstanding the claimants' other qualifications.

We acknowledge that the portions of the Settlement Agreement including the Seventh Amendment on which Ms. Kukla relies do not contain any specific mention of a maximum claimant age. Nonetheless, the matrices themselves, which set forth the benefits payable, explicitly reference the age of the claimant. See Settlement Agreement § IV.B.2.a.

The wording of the matrices themselves in the Settlement Agreement clearly confirms that age is an essential factor in determining whether a claimant may receive Matrix Benefits.

---

accompanying documentation, while Parts (ii) and (iii) of § IX.A.1.b require a claimant to "qualif[y] for the payment of benefits on Matrix Levels III, IV or V under the terms of the Settlement Agreement as it existed before the Execution Date" and "qualif[y] as having the High Matrix Level Qualifying Factors at the same Matrix Level for which [the claimant] qualifies for benefits under the Settlement Agreement as it existed before the Execution Date." Seventh Amendment § IX.A.1.

Pursuant to Matrices A-1 and B-1, otherwise-qualified claimants aged 24 and below are, with certain exceptions, entitled to the highest Matrix Benefits awards, while such claimants aged 25 through 64 are entitled to awards that, with certain exceptions, decrease by five percent for every five-year age interval. Once such a claimant reaches the age of 65, however, the amount to which she is entitled decreases at a more rapid rate over time. The matrix columns for claimants aged 65 through 69 generally provide for a ten percent decrease in benefits (or two percent per year), while the interval for claimants aged 70 through 79 is generally accompanied by a 50 percent decrease in benefits. Given the precipitous decline in benefits that accompanies a claimant's increase in age above the age of 64, a complete exclusion of claimants aged 80 and above from Matrix Benefits is not surprising.

Furthermore, a careful review of the language in the matrix column setting forth benefits amounts for claimants aged 24 and younger is telling. See Settlement Agreement § IV.B.2.a. The Settlement Agreement uses the term "≤ 24" to encompass claimants whose age is less than or equal to 24. Had the parties to the Settlement Agreement intended to extend benefits eligibility to claimants over the age of 79, they could easily have included a "≥" symbol in the column providing benefits to the oldest category of claimants. The fact that the matrices

-7-

contain no such inclusive symbol for the oldest category of claimants, while relying on such a symbol for the youngest category of claimants, makes clear that the matrices provide no benefits to claimants aged 80 and above.

The reason for the omission from the Settlement Agreement of benefits for persons the age of Ms. Kukla was explained at the Fairness Hearing when it was before this court for approval. In its memorandum in support of PTO No. 1415 approving the Settlement Agreement, this court acknowledged that a claimant's likelihood of experiencing valvular regurgitation increases as the claimant ages, notwithstanding the claimant's ingestion of Diet Drugs. In re Diet Drugs, PTO No. 1415, 2000 WL 1222042, at *22. This court stated, "age increasingly confounds the effects of diet drugs in producing valvular regurgitation." Id. at *9.

This acknowledgement is consistent with what was said at the Fairness Hearing. At that hearing, Michael D. Fishbein, Esquire, appearing on behalf of the Plaintiffs' Management Committee, explained that the Matrix Benefits to which a particular claimant was entitled decreased in relation to the claimant's age, at a rate of one percent per year or five percent per five-year interval. Transcript of Fairness Hearing at 76, In re Diet Drugs, No. 99-20593 (E.D. Pa. May 2, 2000). Mr. Fishbein described the rationale behind this age-based framework:

-8-

> . . . [T]he younger you are when you have valve disease, the longer period you're going to suffer with your disease, be potentially disabled from your disease. If you're young and you have a valve replacement, it's likely you may need another replacement. So, age is a surrogate for time of disability or period of disability, and for that reason we used age. . . . In other words, age is a risk factor independent of diet drugs for valvular regurgitation. So, for both of these reasons, we chose this diminution by age as a concept to apply in constructing the matrices.
>
> . . . .
>
> . . . [Age] matters in terms of why you have [valvular heart disease]. Matters in terms of the period of disability. Matters in terms of whether you can expect numerous or several replacement valvular replacement operations if you have severe valvular disease.

Id. at 76-77, 117.

In our view, the wording of the Settlement Agreement, Mr. Fishbein's explanation at the Fairness Hearing, and the court's August 28, 2000 memorandum accompanying PTO No. 1415 confirm that the age of a claimant is a decisive factor in determining whether benefits are to be paid. The parties to the Settlement Agreement understood that a claimant's increasing age should have an effect on her ability to collect Matrix Benefits and that an otherwise-eligible claimant who was older at the time of diagnosis or qualifying event would be entitled to a smaller Matrix Benefits award than would a similarly-situated claimant who was younger at the time of her diagnosis or

qualifying event. If the diagnosis or qualifying event occurred after the age of 79, no benefit would be awarded. Given that the parties to the Settlement Agreement recognized that age compounds the effects of Diet Drugs and should accordingly impact a claimant's entitlement to Matrix Benefits, it was reasonable for the parties to agree that a claimant over the age of 79 must be excluded from receiving the Matrix Benefit that Ms. Kukla seeks.

Even if we were to accept Ms. Kukla's contention that an ambiguity in the Settlement Agreement should be interpreted as providing Matrix Benefits to claimants 80 and older, we would have at our disposal no standards with which to calculate an appropriate award. Neither the Settlement Agreement nor its Seventh Amendment provides any guidance as to how benefits might be calculated for an undesignated category of claimants. Matrices A-1 and B-1 set forth benefits that decrease at a consistent rate relative to age for claimants between the ages of 25 and 64. However, this rate decreases more significantly when a claimant reaches the age of 65 and decreases even more dramatically if the claimant is 70 or older. Given these variable and not predictable rate decreases, we would face obvious difficulty in calculating an appropriate award for a claimant whose age lies outside of the matrices, even if we were to attempt to do so.

In sum, the Arbitrator's determination was not clearly erroneous as to his findings of fact, and he did not err as to his conclusions of law.  The Report and Award of the Arbitrator will be affirmed.