IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: DIET DRUGS (PHENTERMINE/ FENFLURAMINE/DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION : : : : | MDL DOCKET NO. 1203 |
| THIS DOCUMENT RELATES TO: : : | NO. 99-20593 |
| SHEILA BROWN, et al. : : | |
| v. : : | |
| AMERICAN HOME PRODUCTS CORPORATION : : : | |
| THIS DOCUMENT RELATES TO: : : | |
| Claimant:    Norma Schlager : Claim No.: 183/00 1947282 : : | 2:15 MD 1203 |

<u>MEMORANDUM IN SUPPORT OF SEPARATE PRETRIAL ORDER NO. 9457</u>

Bartle, J.                                              January 27, 2016

Norma Schlager ("Schlager") seeks Matrix Compensation Benefits ("Matrix Benefits") from the AHP Settlement Trust (the "Trust") under the Diet Drug Nationwide Class Action Settlement Agreement ("Settlement Agreement") with Wyeth, Inc.[1] Before the court is her motion seeking a determination that her claim for Matrix Benefits is not time-barred by Court Approved Procedure No. 16 ("CAP 16").

---

1. Prior to March 11, 2002, Wyeth was American Home Products Corporation. In 2009, Pfizer, Inc. acquired Wyeth.

I.

Under the Settlement Agreement, Matrix Benefits are awarded to compensate claimants for medical conditions caused by Pondimin® or Redux™ ("Diet Drugs").[2] A claimant, such as Schlager, who seeks Matrix Benefits may demonstrate her eligibility for those Benefits in one of two ways. She may be eligible if she was diagnosed by a Qualified Physician as FDA Positive or as having mild mitral regurgitation by an echocardiogram performed on or before January 3, 2003, provided that she registered for Settlement Benefits by May 3, 2003. Alternatively, she may be eligible if she was diagnosed by a Qualified Physician on or before September 30, 2005 with Endocardial Fibrosis, provided that she registered for benefits by January 1, 2006.

---

2. Matrix Benefits are paid according to two benefit matrices (Matrix "A" and Matrix "B"), which generally classify claimants for compensation purposes based upon the severity of their medical conditions, their ages when diagnosed, and the presence of other medical conditions that also may have caused or contributed to a claimant's valvular heart disease. See Settlement Agreement, §§ IV.B.2.b. and IV.B.2.d.(1)-(2). Matrix A-1 describes the compensation available to Diet Drug Recipients with serious valvular heart disease who took the drugs for 61 days or longer and who did not have any of the alternative causes of the disease that made the B matrices applicable. In contrast, Matrix B-1 outlines the compensation available to Diet Drug Recipients with serious valvular heart disease who were registered as having only mild mitral regurgitation by the close of the Screening Period or who took the drugs for 60 days or less or who had factors that would make it difficult for them to prove that their heart disease was caused solely by the use of these Diet Drugs.

The Seventh Amendment to the Settlement Agreement provides that a Category One or Category Two Class Member[3] can qualify to receive Seventh Amendment Matrix Level III, IV or V Benefits from the Trust.[4]  <u>See</u> Seventh Amendment § IX.A.1.  In order to qualify for these "High-Level Benefits," the Class Member must satisfy the deadlines set forth in § IX.A.1.a of the Seventh Amendment, which reads in relevant part:

> The Diet Drug Recipient whose condition forms the basis for the claim has or had High Matrix Level Qualifying Factors that were diagnosed and occurred by the earlier of: (i) December 31, 2011; or (ii) 15 years after the date of the Diet Drug Recipient's last ingestion of Diet Drugs.

The Class Member is also required to submit a properly completed Green Form and accompanying documentation.  Seventh Amendment §§ I.B.64, IX.A.1.  In addition, she must

> (ii) qualif[y] for the payment of benefits on Matrix Levels III, IV or V under the terms of the Settlement Agreement as it existed before the Execution Date; and
>
> (iii) qualif[y] as having the High Matrix Level Qualifying Factors on the same Matrix Level for which the Class Member qualifies for benefits under the Settlement Agreement as it existed before the Execution Date.

---

3. The definitions of Category One and Category Two are set forth in §§ III.A.1 and III.A.2 of the Seventh Amendment to the Settlement Agreement.

4. The Settlement Agreement matrices include five "levels" of possible benefits.  In general, the level of benefits for which a Class Member qualifies corresponds to the type and severity of medical conditions she has experienced.

Id. §§ IX.A.1.b(ii)-(iii). If a Class Member who was previously entitled only to Level I or Level II benefits "progress[es] to more serious levels of valvular heart disease," she has "the right to 'step up' to higher amounts of compensation" - that is Levels III, IV, or V - "as those levels occur pursuant to the settlement matrices." Pretrial Order ("PTO") No. 1415 (Aug. 28, 2000).

Schlager asserts that she took Diet Drugs for a period of time in 1995 and 1996 and that she subsequently developed heart problems. She underwent an echocardiogram in February 2003. In April of that year, she submitted to the Trust a Green Form alleging Level II conditions. She did not opt out of the Seventh Amendment, and in March 2005, she was informed that she qualified as a Category One Class Member.

In 2008, the Seventh Amendment Fund Administrator (the "Fund Administrator") finished processing Schlager's claim. It concluded that she had not established the necessary medical conditions to qualify for Category One benefits and that she was entitled to a Minimum Payment Amount of $2,000. In a letter to Schlager dated March 5, 2008, the Fund Administrator summarized its conclusions as to Schlager's claim. The letter first acknowledged receipt of Schlager's Category One Proof of Claim Form and indicated that her echocardiogram had been submitted to

-4-

a Participating Physician for Medical Review. It continued by stating that this Medical Review, "together with other factors such as proof of diet drug use," had led the Fund Administrator to reach an initial determination that Schlager was entitled to benefits corresponding to "Mild Mitral Regurgitation Only." This meant that Schlager was "entitled to receive the $2,000 Minimum Payment Amount from the Supplemental Class Settlement Fund." The letter continued:

> You will also be entitled to claim Matrix Compensation Benefits at Levels III, IV or V, as modified by the 7th Amendment, if your condition worsens so as to qualify at those levels before December 31, 2011 or fifteen years after the last use of the diet drugs, whichever date is earlier.

Also contained in the Fund Administrator's letter was a statement that "[t]he rights and obligations of Category One Class Members, including restrictions regarding the distribution of benefits, are set forth in the 7th Amendment, which governs."

According to Schlager, her heart condition worsened in the years following the Fund Administrator's determination. On April 8, 2009, her son, an attorney who is handling her claim, wrote a letter to Class Counsel advising him that Schlager "may require heart surgery for what are **covered complications** and . . . wanted to affirm . . . that the medical costs of this type would be covered." Schlager's son followed up with a letter dated April 29, 2009, in which he wrote: "We are going to see

-5-

the surgeon tomorrow. The reason for the surgery is consistent with the documentation previously provided. I wanted to affirm with you that medical costs of this type would be covered." Schlager underwent surgery to replace her aortic valve on September 2, 2010.

On November 8, 2010, this court approved CAP 16 as PTO 8559. In pertinent part, CAP 16 modified the deadlines applicable to Class Members seeking Matrix Benefits. It stated:

> **5. Green Form Filing Deadline.** Any Class Member who wishes to seek Matrix Compensation Benefits must submit a completed and executed Green Form Part I and Green Form Part II postmarked or delivered to the Trust no later than four years from the later of (a) the entry of an Order approving this Procedure or (b) the date on which the Diet Drug Recipient was first diagnosed as having the last occurring condition or event upon which the claim for Matrix Compensation Benefits is based.

PTO No. 8559 (Nov. 8, 2010).

In April 2014, Schlager submitted to the Trust a copy of the operative report of her September 2010 surgery, without more. Nine months later, in January 2015, she partially completed a second Green Form and submitted it to the Trust without a doctor's certification. In it, she sought Level III benefits for her September 2010 aortic valve surgery. Schlager states that this incomplete Green Form was meant "to 'notify' the Trust *again* of the aortic valve surgery." The Trust

responded to this submission by informing Schlager in March 2015 that her Level III claim was tentatively being denied because she had not submitted a completed Green Form by the November 8, 2014 deadline imposed by CAP 16 and because she had not provided adequate proof of her use of Diet Drugs. The Trust reiterated this denial in a Final Determination dated June 17, 2015.

Schlager appealed the Final Determination to arbitration pursuant to the Settlement Agreement. On July 7, 2015, this court referred her claim to arbitration, which has not yet been scheduled. Meanwhile, on October 27, 2015, Schlager provided the Trust with a completed Green Form seeking Level III benefits for her aortic valve surgery. She also submitted materials purporting to prove her use of Diet Drugs. The Trust no longer contests Schlager's assertion that she did indeed ingest Diet Drugs. The only remaining issue appears to be whether her claim for Level III benefits in connection with her aortic valve surgery was timely submitted.

Although arbitration of Schlager's claim has not taken place to date, she filed a motion on November 13, 2015 requesting a determination from this court on the timeliness of her claim. The Trust, Class Counsel, and Wyeth all disagree with her contention that her claim was timely.

II.

The essence of Schlager's argument is that the deadlines established by CAP 16 should not be construed as applying to her claim for Level III Matrix Benefits. She observes that her aortic valve surgery took place in September 2010, while CAP 16 did not go into effect until November 2010. According to Schlager, interpreting CAP 16 to govern her claim would involve a retroactive application of that order, and she urges that nothing in CAP 16 provides for such retroactivity.

This argument is unpersuasive. As the Trust notes, CAP 16 contemplated the possibility that a claimant would experience a qualifying health event before CAP 16 went into effect but would not seek benefits until after it went into effect. It did so by setting forth filing deadlines not only for claimants who had already experienced a Matrix qualifying event but also for those who had yet to experience such an event. Under Cap 16, the former must submit the required Green Form four years from "the date on which the Diet Drug Recipient was first diagnosed as having the last occurring condition or event upon which the claim . . . is based," while the latter must submit the Green Form by November 8, 2014, four years after the entry of the order approving CAP 16. The Trust is correct that if CAP 16 was intended to apply only to claims based on qualifying events that occurred after it went into effect,

"there would have been no reason to establish" the alternative deadline of November 8, 2014. This deadline was meant to apply to claimants like Schlager who experienced events <u>before</u> this court signed the order approving Cap 16. In sum, CAP 16 governs claims based on diagnoses occurring before November 8, 2010, not just claims arising after that date.

Schlager also urges that CAP 16's deadlines cannot govern her Level III claim because she received no notice when CAP 16 went into effect. Even accepting Schlager's apparent claim that CAP 16 effectively amended the Settlement Agreement, adequate notice was provided. In multidistrict actions like this one, notice of a change to a settlement agreement is adequate when the "representatives of all class members having active cases . . . [are] notified of the proposed amendment," which occurred here. <u>See</u> <u>In re Diet Drugs Prods. Liab. Litig.</u>, 93 F. App'x 338, 344 (3d Cir. 2004). Moreover, notice of a change to a class action settlement "is only required where the amendment would have a material adverse effect on the rights of class members." <u>In re Diet Drugs Prods. Liab. Litig.</u>, No. 99-20593, 2010 WL 2735414, at *6 (E.D. Pa. July 2, 2010). We are not persuaded that CAP 16, which provided a minimum of four years for class members to seek benefits for qualifying events, had a "material adverse effect" on their rights. <u>See</u> <u>id.</u>

In addition, Schlager takes the position that CAP 16 should not apply to her because of the letter she received from the Fund Administrator on March 5, 2008. As noted above, that letter instructed Schlager that

> [y]ou will . . . be entitled to claim Matrix Compensation Benefits at Levels III, IV or V, as modified by the 7th Amendment, if your condition worsens so as to qualify at those levels before December 31, 2011 or fifteen years after the last use of the diet drugs, whichever date is earlier."

Schlager interprets this to mean that because her condition "worsened" before December 31, 2011, requiring her to undergo aortic valve surgery, she is "entitled to claim Matrix Compensation Benefits at Levels III, IV or V" without further restriction. She appears to construe CAP 16 as being inconsistent with the text of the letter she received from the Fund Administrator. This is not the case. The letter merely reminded Schlager of her entitlement to file a claim for High-Level Matrix Benefits, while CAP 16 set forth deadlines for doing so. It would be an absurd reading of the letter to construe it as permitting Schlager to file High-Level Matrix claims "into infinity." What is more, entitlement to file a *claim* for benefits is not the same as entitlement to *receive* benefits. We have previously rejected claimants' arguments that the Settlement Agreement and the Seventh Amendment "guarantee Matrix Level III, IV and V payments on the current Matrix if

-10-

Class Members' conditions progressed to more severe events" such as valve surgery. See Memorandum in Support of PTO 9217 (Mar. 25, 2014). We do so again here.

Schlager next claims that even if the deadlines set forth in CAP 16 govern her Level III claim, she satisfied those deadlines by submitting a Green Form in 2003, in connection with her Level II claim, and by then "notifying" the Trust of her aortic valve surgery in April 2009, in April 2014, and again in January 2015. However, as the Trust points out in its opposition brief, there is no support for Schlager's position. Indeed, the Settlement Agreement, which requires any claimant to complete a Green Form and submit it to the Trust, makes clear that a Matrix Benefits claim is incomplete unless and until the claimant submits "all Medical Information and a properly and fully completed GREEN FORM . . . relating to such claim" and satisfies the other applicable requirements. Schlager does not dispute that she did not submit a fully completed Green Form in connection with her Level III claim until October 2015, nearly a year after the November 8, 2014 deadline applicable to her claim under CAP 16. Any "notification" she provided to the Trust before that date did not amount to a timely claim.

In addition, Schlager maintains that the court should waive the deadlines set forth on CAP 16 as to her claim on the basis of excusable neglect. It is true that we may extend the

deadlines set forth in the Settlement Agreement if we find excusable neglect on the part of the claimant. In re Diet Drugs Prods. Liab. Litig., 2007 WL 4616903 (Nov. 20, 2007) ("Clark"); In re Orthopedic Bone Screw Prods. Liab. Litig. ("In re Bone Screw Litig."), 246 F.3d 315, 323 (3d Cir. 2001). In doing so, we must evaluate four factors: "(1) the danger of prejudice to the non-movant; (2) the length of the delay and its potential effect on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith." Clark, 2007 WL 4616903 at *2 (citing Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd., 507 U.S. 380, 395 (1993); In re Bone Screw Litig., 246 F.3d at 322-23).

In addressing the first factor, that is the risk that the non-movant will be prejudiced, we have previously opined:

> [t]he finality provided by the Settlement Agreement to Wyeth, the Trust and other Class Members has been of paramount importance . . . . Finality is important not only to Wyeth, but also to the Trust so that it can consider applications for Matrix Benefits and provide those benefits to injured Class Members in a timely manner. . . . Although the admission of any particular claimant may not in itself cause a substantial drain on the Trust, allowing this claimant to escape the firm deadlines set forth in the Settlement Agreement . . . will surely encourage others to seek the same relief.

Id. (citation omitted). The same is true here. Waiving the applicable deadlines with respect to Schlager would "encourage others to seek the same relief" and compromise the Settlement Agreement's finality, resulting in prejudice to the non-movants.

We next consider the length of the delay and its effect on judicial proceedings. See id. We have already determined that Schlager had at least constructive, if not actual, notice of CAP 16, which went into effect in November 2010. Since Schlager underwent aortic valve surgery in September 2010, she had approximately four years and two months within which to perfect a claim for Level III benefits. Nonetheless, she did not submit a completed Green Form in connection with that claim until October 2015, nearly a year after the November 11, 2014 deadline. This delay affects judicial proceedings. See id. at *3. Were we to grant Schlager an extension, it "would undermine the finality of the Settlement Agreement and open the floodgates to similarly situated Class Members who are presently time-barred." Id.

As to the third consideration, that is the reason for the delay and Schlager's degree of control over it, Schlager explains that she had misplaced the pharmacy records proving her ingestion of Diet Drugs and that in June 2014 she suffered a stroke. However, she does not argue that these factors rendered her unable to file a claim or made it impossible for a claim to

-13-

be filed on her behalf. Further, to the extent that the delay was linked to the misplaced pharmacy records, this factor was within Schlager's control.

Finally, with respect to the fourth factor, there is no reason for us to conclude that Schlager did not act in good faith. Nonetheless, "the danger of prejudice to non-movants and the length of, and reasons for the delay[] weigh heavily in favor of finding" that Schlager did not act with excusable neglect. See id. at *5. We will not waive the deadlines as to Schlager on this basis.

This brings us to Schlager's argument that if CAP 16 is applicable to her Level III claim, "it should not be imposed . . . based on inducement by defendants, concealment or fraud." There is absolutely no basis for Schlager's contention that the Trust, Wyeth, or Class Counsel engaged in inducement, concealment, or fraud, or for her claim that she was "induced or tricked by an adversary into allowing a deadline to pass."

Finally, Schlager suggests that the court impose a new four-year statute of limitations for the claims of "all members of the Class," requiring all such claims to be filed by December 31, 2015. Because we have determined that CAP 16 applies to Schlager's claim, there is no reason to modify the deadlines set forth therein.